## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| ALEJANDRO DOS SANTOS, III, | | |
| | Plaintiff, | |
| v. | | 5:22-CV-1102 |
| | | (MAD/ATB) |
| THE SYRACUSE POLICE DEPT., et al. | | |
| | Defendants. | |

---

| | | |
|---|---|---|
| ALEJANDRO DOS SANTOS, III, | | |
| | Plaintiff, | |
| v. | | 5:22-CV-1164 |
| | | (MAD/ATB) |
| JARRETT WOODFORK., et al. | | |
| | Defendants. | |

---

ALEJANDRO DOS SANTOS, III,  Plaintiff, Pro Se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

The Clerk sent to this court, for review, an amended civil rights complaint filed by pro se plaintiff Alejandro Dos Santos, III, following the dismissal of prior complaints filed by him in Case No. 5:22-CV-1102 ("No. 1102") and Case No. 5:22-CV-1164 ("No. 1164").  For the reasons stated below, this court recommends that at least one aspect of plaintiff's Fourth Amendment claim be allowed to proceed as to defendant Pelz[1] and that the remainder of the amended complaint be dismissed.

### I.   Procedural History

On November 15, 2022, this court issued an Order and Report-Recommendation

---

[1] Plaintiff sometimes misspelled this defendant's last name as "Peltz."  The court will use the correct spelling of this defendant's last name–"Pelz."

to U.S. District Court Judge Mae D'Agostino, recommending dismissal of plaintiff's initial complaints in the two related actions that he filed.  (No. 1102, Dkt. No. 5).  Judge D'Agostino adopted my recommendations and ordered that certain defendants and claims be dismissed with prejudice or without leave to amend, but allowed plaintiff an opportunity to file an amended complaint attempting to cure the deficiencies in certain other civil rights claims that he asserted.  (No. 1102, Dkt. No. 6).  Plaintiff timely filed a 43-page amended complaint (hereinafter "AC"), as well as voluminous exhibits.  (No. 1102, Dkt. Nos. 7-9).  The court assumes familiarity with the prior opinions and will not repeat the discussion of the underlying facts and legal analysis therein, except as necessary to address the viability of the amended complaint.

## II.   **The Amended Complaint**

Plaintiff's amended complaint repeats most of the facts set forth in the original complaint in Case No. 1102.  (Dkt. No. 1).  However, the amended complaint omits the defendants and most of the claims that were previously dismissed with prejudice or without leave to amend,[2] and adds allegations in an effort to address the deficiencies identified by the court with respect to various other dismissed claims.

The only defendants named in the amended complaint are the same nine officers of the Syracuse Police Department ("SPD") who were originally sued in Case No. 1102,

---

[2] The amended complaint does not name any of the defendants originally sued in Case No. 1164–the Onondaga County District Attorney's Office and Assistant District Attorney Jarrett Woodfork.  Judge D'Agostino's ruled that any of the claims and defendants previously dismissed without prejudice would be dismissed, with judgment entered in defendants' favor, unless plaintiff filed related amended claims within 30 days.  (No. 1164, Dkt. No. 7 at 7).  Accordingly, the complaint in Case No. 1164 should be dismissed with prejudice.

and they are now sued in their individual and official capacities.[3]  (AC at 1-2, 41 (¶

105)).[4]  Although the amended complaint includes many allegations critical of various

Child Protective Service ("CPS") and Family Court personnel, no one from those

agencies are named as defendants.

    The description of plaintiff's causes of action in the amended complaint are not

entirely clear, and they overlap considerably.  (AC at 5).  Construing the pro se

amended complaint liberally, plaintiff appears to assert the following claims:  (1) a

Fourth Amendment claim that the defendant officers searched his person and perhaps

detained him unlawfully for several hours on October 20, 2019, while officers searched

the apartment of his former domestic partner, Jasmine McCarthy; and (2) a Fourteenth

Amendment Due Process claim that the defendant officers improperly interfered with

plaintiff's custodial rights with respect to his daughter, both by preventing his access to

her at the hospital on October 20, 2019, and by thereafter providing false information to

CPS and the Family Court, which prevented plaintiff from regaining custody of and

access to his daughter for several subsequent years.  (AC at 5).  As discussed further

---

[3] Although the City of Syracuse is not named as a defendant, they are arguably covered by
the suit against the officers employed by the SPD, to the extent they were sued in their official
capacities.  As discussed in my prior Report-Recommendation, the City of Syracuse would be
liable on Section 1983 claims only if the plaintiff made plausible *Monell* allegations that the
municipality adopted a "custom" or "policy" which was the "moving force" behind the officers'
alleged constitutional misconduct.  (No. 1102, Dkt. No. 5 at 23-24).  The only allegation in the
amended complaint that appears to attempt to support a *Monell* claim is a conclusory claim with
no factual support.  (AC at 35 (¶ 85) ("the [SPD] in fact incentives [sic] promotions for violating
citizens rights . . . especially against black and brown residents")).  Thus, the amended complaint
does not state a plausible *Monell* claim against the City of Syracuse, based on the authority set
forth in my prior Report-Recommendation.

[4] Because the pages of the amended complaint and supporting affidavit are not
consecutively numbered, the court will cite to the page numbers of the amended complaint
assigned by the court's electronic docketing system, CM-ECF.

below, allegations in the amended complaint suggest that plaintiff may also be trying to claim that he has standing to challenge the search of Ms. McCarthy's apartment generally, notwithstanding the fact that Judge D'Agostino previously dismissed that Fourth Amendment claim without leave to amend.  (Case No. 1102, Dkt. No. 6 at 4, 7). And plaintiff may be attempting to reassert a claim based on the failure of the Syracuse Police Department to return property seized during the search of the apartment, which would still be subject to dismissal for reasons stated in my prior Report-Recommendation.

## III.   **Applicable Legal Standards for Review of Amended Complaint**

When a pro se plaintiff qualifies to proceed IFP, the court the court "shall dismiss a case at any time if the court determines" that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).  In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond.  However, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  In assessing whether a complaint states a plausible claim, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) .

## IV.   <u>Statute of Limitations</u>

This court noted, in my initial Report-Recommendation, that plaintiff's first complaint was filed on October 25, 2019, slightly more than three years after the events of October 19 and 20, 2019, making many of plaintiff's claims predicated on those events possibly subject to a statute-of-limitations bar.  (Dkt. No. 5 at 3, 6 (n. 4), 20 (n.14)).  Because plaintiff, at that time, had no opportunity to raise an equitable tolling argument, I did not resolve the statute-of-limitation issue.  (Dkt. No. 5 at 6 (n.4)).

In his amended complaint, plaintiff asserted that he pursued his rights diligently, but was hampered in marshaling his claims by delays in the Family Court proceedings and his receipt of relevant discovery used to support this action, due in part to the COVID-19 restrictions.  (AC at 33 (¶ 79)).  Plaintiff's claims might not normally

5

support a valid equitable tolling argument.[5]  However, on March 20, 2020, former New

York State Governor Andrew Cuomo signed Executive Order 202.8, which declared

that "any specific time limit for the commencement, filing, or service of any legal

action, notice, motion, or other process or proceeding as prescribed by the procedural

laws of the state . . . is hereby tolled from the date of this executive order until April 19,

2020[,]" and he thereafter extended that order until November 3, 2020.  District courts

in the Circuit have almost uniformly found that Executive Order 202.8 and subsequent

orders tolled the statute of limitations period from March 20, 2020 through November

3, 2020, a total of 228 days, for Section 1983 claims filed in New York, for which the

statute of limitations, and any tolling provisions, are adopted from state law.[6]  With the

---

[5] Plaintiff noted that he did not have the discovery items on which he relied in this action "until early 2022," but did not explain why that prevented him from filing his action over the many months before the statute of limitation expired on October 20, 2022.  (AC at 33 (¶ 79). *See, e.g.*, *Rodriguez v. Hudson Valley Chrysler*, No. 20-CV-9646, 2021 WL 5910173, at *3 (S.D.N.Y. Dec. 14, 2021) (pro se plaintiff in employment discrimination action is not entitled to equitable tolling despite the COVID pandemic if he cannot "'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'") (citation omitted); *Findley v. United Parcel Serv. Inc.*, No. 21-CV-131, 2022 WL 20086756, at *7 (E.D.N.Y. Jan. 11, 2022) ("even assuming that the Covid-19 pandemic created an extraordinary circumstance," pro se plaintiff in a fair representation action "has failed to demonstrate – and the record does not reflect – that the pandemic caused him to miss the relevant filing deadline" . . . and he "failed to demonstrate . . . that he acted with reasonable diligence").

[6] *See, e.g.*, *McDonald v. City of New York*, No. 20-CV-4614, 2022 WL 1469395, at *3-4 (E.D.N.Y. May 10, 2022) ("While the Second Circuit has not considered whether the Executive Order tolls the statute of limitations for section 1983 cases brought in federal courts, . . . the majority of the courts [in this Circuit] have determined that the Executive Order applies to section 1983 suits in federal courts . . . [b]ecause section 1983 does not provide for a federal statute of limitations, but instead borrows the state statute of limitations.") (collecting cases); *Bell v. Saunders*, No. 9:20-CV-256 (BKS/TWD), 2022 WL 2064872, at *4-5 (N.D.N.Y. June 8, 2022) ("[t]he Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules,' . . . unless applying the state's tolling rules

benefit of the 228 day tolling period, plaintiff's complaints were filed within the applicable three-year statute of limitation.

## V.   <u>Fourth Amendment Claims</u>

### A.   **The Apartment Search**

In my initial opinion, I recommended dismissal of plaintiff's claim that the police search of Ms. McCarthy's apartment violated the Fourth Amendment on various ground, particularly because plaintiff's lack of a reasonable expectation of privacy in the apartment, where, he repeatedly claimed, he did not reside.  (Case No. 1102, Dkt. No. 5 at 6-11).  As noted, Judge D'Agostino dismissed plaintiff's Fourth Amendment claim without leave to amend.  (Case No. 1102, Dkt. No. 6 at 4, 7).

Plaintiff now alleges that he had a reasonable expectation of privacy with respect to Ms. McCarthy's apartment "because of the nature of our relationship[,] . . .the fact I did receive important private mail there . . .[,] [and because] I had personal affects at Jasmine['s] property including miscellaneous toiletries and light work clothing there." (AC at 32 (¶ 75)).  These allegation contradict plaintiff's prior, adamant claims that he did not reside at Ms. McCarthy's apartment and that seized property from that residence, particularly the loaded shotgun, did not belong to him.[7]  Given her ruling

<hr/>

'would defeat the goals of the federal statute at issue.'") (citation omitted). The cases cited in note 5 above involved federal claims which did not adopt state statute of limitations, and thus did not toll the statute based on the New York executive order.

[7] Plaintiff now also alleges that the police seized from Ms. McCarthy's apartment, and refused to return, a cellphone and tablet that belonged to him.  (AC at 32 (¶ 76)).  He further claims that he moved back into Ms. McCarthy's apartment as of October 20, 2019, and that she thereafter transferred her rights to the seized shotgun to plaintiff, entitling him to return of that property.  (AC at 32-33).  Even if these new claims are credited, plaintiff's Section 1983 due process claim for return of property seized from the apartment would still fail because of the

denying plaintiff leave to amend this claim, this court will defer to Judge D'Agostino as to whether plaintiff's new allegations should be considered and whether they would be sufficient to survive initial review with respect to standing, notwithstanding the legal authority cited in my original Report-Recommendation.[8]  However, if Judge D'Agostino permits this claim to go forward, the court recommends that it be allowed to proceed only against defendant Pelz, the affiant on the allegedly false affidavit supporting the amended search warrant.  Plaintiff's amended complaint[9] does not

---

availability of other, adequate state post-deprivation remedies, as explained in my earlier Report-Recommendation, which Judge D'Agostino adopted, dismissing this claim without leave to amend.  (*See* No. 1102, Dkt. No. 5 at 11-12; Dkt. No. 6 at 4, 7).

[8] *U.S. v. Sanchez*, 419 F. App'x 27, 31 (2d Cir. 2011) ("Samuels's own affidavit disclaimed any expectation of privacy in his ex-girlfriend's apartment, stating that he 'do[es] not live' there, 'never lived' there, and 'did not have control or authority over her home and could not enter her home without her permission.' He therefore may not challenge the search of that home."); *Tobias v. Cnty. of Putnam*, 191 F. Supp. 2d 364, 372-73 (S.D.N.Y. 2002) (given that plaintiff Tobias had his own apartment in a different town; did not live at the cottage searched; was invited by the tenant, but was not an overnight guest; and was barred from the premises by the landlord, "we cannot say that he had a reasonable expectation of privacy" in the cottage").

[9] *See* AC at 34-35 (¶ 83) ("Each of the Defendants All participated personally in the unlawful conduct challenged herein and, to the extent they did not personally participate, authorized, acquiesced, set in motion, they otherwise failed to take necessary steps to prevent the unlawful acts happening in their presence . . . ."); AC at 37 (¶¶ 95, 96) ("The defendants all participating in the search knew of the alleged falsification of the affidavit an[d] participated in the tampering of evidence . . ."); AC at 42 (¶ 106) ("Each Officer is individually liable under § 1983, as each individual personally participated in the violation and deprivation of my 4th and 14th amendment rights and no officers stoodup [sic] to stop the deprivation . . . of my rights.") Such conclusory, unsupported statements are insufficient to establish a plausible claim of personal involvement of the defendants other than Det. Pelz (based on the law summarized in the following note) or failure to intervene.  *See, e.g., Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018) ("To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene.") (collecting cases).

plausibly allege that any of the other named defendants were personally involved in the purported unconstitutional conduct relating to the apartment search.[10]  (*See* No. 1102, Dkt. No. 5 at 10-11) ("[plaintiff's] complaint fails to meet even the minimal notice pleading requirements of Fed. R. Civ. P. 8(a) with respect to the Fourth Amendment claim against all but one of the officers who were involved in the search.").

## B.    The Alleged Search and Detention of Plaintiff

The amended complaint contains new allegations that plaintiff was personally frisked, searched, and detained by police for several hours in the hallway outside Ms. McCarthy's apartment after he arrived to pick up clean clothes for Ms. McCarthy.  (AC at 5, 16-18, 23-24).  Plaintiff states that he could not identify the individual officers who searched him (AC at 5, 43 (¶ 106)), and the only individual that he specifically implicates in his alleged search and detention is defendant Pelz (AC at 23 (¶¶ 42-44).[11]

The Second Circuit, in *Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991)

---

[10] The Second Circuit recently clarified the standard for personal involvement of individuals in a § 1983 action, in light of the Supreme Court's 2009 decision in *Ashcroft v. Iqbal*. In *Tangreti v. Bachmann*, the Second Circuit made clear that, in order to attach liability to an individual, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).  "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id*.  The *Tangreti* court stated that "after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that . . . he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of [others], unless that is the same state of mind required for the constitutional deprivation he alleges." *Id*. (citation omitted).

[11] Plaintiff alleges that Det. Pelz frisked him in the hallway outside Ms. McCarthy's apartment.  (AC at 23 (¶ 43)).  He also alleges that Det. Pelz directed other officers to "keep an eye" on plaintiff and that those other, unspecified officers "restricted my freedom to leave the hallway to even to outside when I attempted, restraining my liberty concluding that a 'seizure' of my person[] has occurred making me hold my urine for 4+ hours . . . ."  (AC at 23 (¶¶ 42, 44)).

cogently summarized the Fourth Amendment standards for the detaining and searching

an individual in or near the premises where a justified police search is being conducted:

> Absent special circumstances, the police . . . have the authority to detain
> occupants of premises while an authorized search is in progress, regardless of
> individualized suspicion. *See Michigan v. Summers*, 452 U.S. 692, [705] . . .
> (1981). They also have the authority to make a limited search of an individual on
> those premises as a self-protective measure. *See, e.g., United States v. Barlin*,
> 686 F.2d 81, 87 (2d Cir.1982) (search of handbag of woman who had entered an
> apartment together with individuals known to be involved in drug transactions in
> the apartment constituted a reasonable, self-protective "minimal intrusion").
> Beyond this general authority to detain persons and make limited security
> searches, however, there must be probable cause, or at least some degree of
> particularized suspicion, to justify further searches or seizures of individuals who
> are neither named in the warrant nor arrested as a consequence of the search.

928 F.2d at 606. *See also Bailey v. United States*, 568 U.S. 186, 201-02 (2013) (the

*Summers* rule, which allows officers executing a search warrant to detain the occupants

of the premises, is spatially constrained and limited to the immediate vicinity of the

premises to be searched).

When plaintiff approached Ms. McCarthy's apartment through the adjacent

hallway, he was not allowed to enter the apartment and was allegedly frisked and/or

searched by the officers. (AC at 16-18, 23). The search warrants for Ms. McCarthy's

residence covered, inter alia, "all public hall ways leading to said apartment." (Compl.,

No. 1102, Dkt. No.1 at 33-34; No. 1102, Dkt. No. 9 at 5). When the defendant officers

required plaintiff to wait in the hallway and not enter the apartment during the search,

and to the extent any of them conducted a pat frisk of plaintiff's person, they were

clearly acting within the bounds of the Fourth Amendment. *Bailey v. United States*,

568 U.S. at 199-200 ("In *Summers*, the Court recognized the authority to detain

10

occupants incident to the execution of a search warrant not only in light of the law enforcement interests at stake but also because the intrusion on personal liberty was limited."); *Collier v. Locicero*, 820 F. Supp. 673, 679 (D. Conn. 1993) ("[I]t is abundantly clear that defendant Osso had the authority to detain and frisk the plaintiff," who was encountered on the scene as the officers were executing a search warrant); *United States v. Salazar*, 945 F.2d 47, 51 (2d Cir. 1991) (officers had sufficient reason to pat down a suspected drug dealer who arrived at apartment during lawful consent search).

The amended complaint suggests that plaintiff may have been subjected to a further personal search more intrusive than a pat frisk and alleges that, during the four-hour search of the apartment, he was not allowed to leave the hallway, even to go outside.  (AC at 18-19 (¶ 32), at 23 (¶¶ 42-44), at 42-43 (¶ 106)).  Plaintiff claims that, during the search, the officers were detaining him while attempting to build a charge against him for illegally possessing a firearm, based on false information that he lived in Ms. McCarthy's apartment and that he had a prior felony conviction, and by fraudulently staging the evidence on the scene.  (AC at 18-19 (¶ 32), at 20-23).  The court must treat pro se pleadings with liberality and, in evaluating whether a complaint states a plausible cause of action, must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Holland v. City of New York*, 197 F. Supp. 3d 529, 536-37 (S.D.N.Y. 2016).  Liberally construed, plaintiff's amended complaint adequately pleads a Fourth Amendment claim that his initial detention was

prolonged to an extent that was not justified by reasonable suspicion.[12]  However, as discussed above, plaintiff makes no allegations supporting that any particular defendant other than Det. Pelz was personally involved, or failed to intervene, with respect to this alleged Fourth Amendment violation.  The court recommends that the claim based on plaintiff's personal search and detention be allowed to proceed, but only as against defendant Pelz.[13]

## VI.  **Due Process Claims**

Plaintiff continues to allege that the Syracuse Police Department defendants violated his due process rights under the Fourteenth Amendment by blocking his access to his daughter six hours after he took her to the hospital.  (AC at 5, 10-11 (¶ 19), 12-13 (¶ 24)).  Plaintiff alleges that multiple, unnamed officers of the SPD told plaintiff and Ms. McCarthy that they were not allowed to be at the hospital and, displaying holstered weapons, escorted them out the front door.  (AC at 10-11 (¶ 19)).  Plaintiff states that he and Ms. McCarthy first went to his apartment, and then later went to Ms. McCarthy's apartment, where the police were conducting a search.  (AC at 16-18).

The amended complaint provides a few additional details with respect to the removal of plaintiff and Ms. McCarthy, during the early morning hours of October 20,

---

[12] The court expresses no opinion as to whether this aspect of plaintiff's Fourth Amendment claim regarding his personal search and alleged detention could survive a properly documented dispositive motion.

[13] The voluminous exhibits to plaintiff's original and amended complaints indicate that he has already obtained extensive discovery regarding the conduct of Syracuse police officers on October 19 and 20, 2019.  However, the court is not ruling out that plaintiff might, with further formal discovery, develop more information that supports a motion to amend which adequately pleads the personal involvement of other of the defendant officers.

2019, from the hospital where their unresponsive infant daughter was being treated for a serious brain injury.  However, the plaintiff still does not identify the particular officers who escorted him out of the hospital, or clarify whether plaintiff was denied access to his daughter at the behest of hospital staff, CPS officers who were on the scene, or the police officers, on their own initiative.[14]  The few additional factual allegations in the amended complaint do not materially affect the court's prior conclusion that plaintiff's due process claim relating to the events of October 20, 2019 has not been plausibly pleaded.  (*See* No. 1102, Dkt. No. 5 at 19-22).  The suspicious circumstances of the daughter's severe injuries clearly warranted a child abuse investigation and provided an objectively reasonable basis for believing that her parents presented an imminent threat to their daughter's safety, warranting an emergency deprivation of parental custody, if that is, in fact, what occurred.  In any event, as discussed further below, plaintiff's amended complaint and its attachments provide further information regarding the subsequent Family Court proceedings, where plaintiff's right to access to his daughter was adjudicated.[15]

Plaintiff further bases his due process claim on defendants' allegedly false and misleading statements to CPS case workers and to the Family Court, which resulted in the entry of orders of protection against him and the ongoing denial of his parental and

---

[14] Plaintiff's amended complaint documents that his interaction with CPS, hospital staff, and the responding police officers was contentious, which may have been a factor in the decision to escort him and Ms. McCarthy out of the hospital during the early morning hours of October 20th.  (AC at 7-9).

[15] While plaintiff alleges that the first Family Court proceeding he attended occurred on December 3, 2019, there were apparently prior proceedings in that court as to which plaintiff claimed a lack of notice.  (AC at 11-12 (¶¶ 21-22)).

custodial rights for several years.  (AC at 5, 12-15, 29-31, 37-39, 41-42).  Plaintiff's Due Process claims focus on the SPD defendants, who allegedly provided false information to the Family Court regarding plaintiff's criminal history and his connections to the loaded firearm and other contraband found in Ms. McCarthy's residence with her children.[16]  (AC at 5, 13-16, 21-22, 24, 29-31, 40 (¶ 104), 41-42). However, while the Family Court considered those facts, it placed greater emphasis on the injuries to plaintiff's daughter and the inconsistencies between her injuries and the explanation provided by her parents.  (No. 1102, Dkt. No. 8 at 6, 20-25).[17]  The family court also considered other aspects of plaintiff's conduct, including his alleged violence towards his other children and other individuals.  (*Id*. at 6, 12).

In any event, based on the authority cited in my earlier Report-Recommendation, any claim of plaintiff predicated on the Family Court proceedings relating to the order of protection against him and the custody of his daughter would be subject to dismissal under the domestic relations abstention doctrine, as articulated in the Second Circuit's *Deem* cases.[18]  (*See* No. 1102, Dkt. No. 5 at 18-19, 22-23).  Plaintiff acknowledges that

---

[16] As noted above, plaintiff has not sued CPS, the Family Court, or the staff of either entity.

[17] Although the amended complaint suggests evidence from SPD officers was presented to the Family Court by an "out of court 'witness'" (AC at 30 (¶ 72), 40 (¶ 104)), portions of the November 4, 2022 decision of Family Court Judge DeJoseph indicate that defendants Andrew Rawson and Robert Aubertine testified.  (No. 1102, Dkt. No. 8 at 22-23, 25).  As noted in my prior decision, Family Court witnesses, including law enforcement officers, would be entitled to absolute immune from civil liability.  (*See* No. 1102, Dkt. No. 5 at 19, 22).

[18] *Deem v. DiMella-Deem*, 941 F.3d 618, 623-25 (2d Cir. 2019) ("*Deem I*"); *Deem v. DiMella-Deem*, 800 F. App'x 62, 62-63 (2d Cir.), *cert. denied*, __ U.S. __, 141 S. Ct. 244 (2020) ("*Deem II*").  *See also See Cleary v. Macvicar*, 813 F. App'x 12, 14 (2d Cir. 2020) (dismissal was appropriate on the basis of the domestic relations abstention because plaintiff's claims, which were rooted in his disagreement with the Connecticut Superior Court's order regarding

he was able to challenge the allegedly false evidence from the SPD officers before the Family Court (AC at 40 (¶ 104)), by which time it was clear that plaintiff did not have a prior felony conviction and was not charged in connection with the shotgun found in Ms. McCarthy's apartment.  Plaintiff, while clearly dissatisfied with the rulings of the Family Court, does not establish that he was deprived of a full and fair determination in that forum.  *See Hunter v. Child Protective Servs. of Niagara Cnty.*, No. 1:20-CV-18, 2021 WL 2368024, at *8 (W.D.N.Y. Feb. 22, 2021) ("While plaintiff disagrees with . . . the outcome of the custody proceedings, she fails to successfully allege that any obstacles prevented her from receiving a full and fair determination from the Family Court.  Thus, this Court should abstain from exercising its federal-question jurisdiction over plaintiff's claims . . ." pursuant to the domestic relations abstention doctrine), *report and recommendation adopted*, 2021 WL 1996772 (W.D.N.Y. May 19, 2021), *appeal pending, sub nom. Hunter v. McMahon* (2d Cir, Case No. 21-1473).

## VII.  <u>Opportunity to Amend</u>

Generally, when a court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  A court also does not abuse its discretion by denying a claim with prejudice when plaintiff has had an ample opportunity to amend and has failed to correct the defects previously identified in the claim.  *See, e.g.*, *Dyson*

---

child custody and visitation, were, at a minimum, 'on the verge of being matrimonial in nature'); *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 39 (2d Cir. 2021) (affirming district court's abstention from exercising jurisdiction over complaint alleging that judge improperly awarded custody to child's father).

*v. New York Health Care, Inc.*, 353 F. App'x 502, 503-04 (2d Cir. 2009) (finding district court did not abuse its discretion by dismissing plaintiff's third amended complaint with prejudice because plaintiff had been given ample opportunity to attempt to state a cognizable claim).  The court recommends that plaintiff not be granted any further opportunity to amend his complaint with respect to his due process claims–one relating to the alleged failure of the Syracuse Police Department to return property seized during the search of Ms. McCarthy's apartment, and the other based on the allegation that false information provided by the SPD defendants about plaintiff and the search of Ms. McCarthy's apartment caused the Family Court to deny plaintiff access and custodial rights to his daughter.  As discussed above, these claims are futile and plaintiff was unable to overcome their factual and legal defects in an amended complaint of 43 pages and 106 paragraphs supported by more than 75 pages of exhibits.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP is **GRANTED**,[19] and it is

**ORDERED**, that the complaint in Case No. 5:22-CV-1164 (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**, based on plaintiff's failure to amend the previously dismissed claims in that action in the time frame prescribed by the court,[20]

---

[19] In my previous Report-Recommendation, I granted plaintiff's IFP application "for the purpose of filing only" because all of his claims were recommended for dismissal.  (Case No. 1102, Dkt. No. 5 at 25-26).  Although his IFP application has now been granted without restriction, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[20] As noted above, Judge D'Agostino's previously ruled that any of the claims and defendants previously dismissed without prejudice would be dismissed, with judgment entered in defendants' favor, unless plaintiff filed related amended claims within 30 days of dismissal.  (No. 1164, Dkt. No. 7 at 7).

and it is

> **RECOMMENDED**, that plaintiff's Fourth Amendment claim in the amended complaint in Case No. 5:22-CV-1102 be allowed to proceed, at least with respect to the alleged detention and personal search of plaintiff on October 20, 2019,[21] but only as against defendant Dallas Pelz in his individual capacity, and that the Fourth Amendment claim(s) with respect to the other named defendants be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND**, after plaintiff has an opportunity to pursue formal discovery with respect to the possible personal involvement of the other defendants in the alleged Fourth Amendment violations, and it is

> **RECOMMENDED**, that the remaining, due process claims in the Amended Complaint in Case No. 5:22-CV-1102 be **DISMISSED WITH PREJUDICE**, pursuant to **28 U.S.C. § 1915(e)(2)(B)(i) & (ii)**, and it is

> **ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

---

[21] As discussed above, given her prior ruling denying plaintiff leave to amend his Fourth Amendment claim with respect to the search of Jasmine McCarthy's apartment (Case No. 1022, Dkt. No. 6 at 4, 7), this court will defer to Judge D'Agostino as to whether plaintiff's new allegations in his amended complaint should be considered and whether they would be sufficient to survive initial review with respect to standing to challenge that search.

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 5, 2023

Andrew T. Baxter
U.S. Magistrate Judge